1  MAYER BROWN LLP
   JOHN NADOLENCO (State Bar No. 181128)
2    jnadolenco@mayerbrown.com
   BRONWYN F. POLLOCK (State Bar No. 210912)
3    bpollock@mayerbrown.com
   350 South Grand Avenue, 25th Floor
4  Los Angeles, California 90071-1503
   Telephone:  (213) 229-9500
5  Facsimile:   (213) 625-0248

6  MAYER BROWN LLP
   DIANA L. HOOVER (pro hac vice)
7    dhoover@mayerbrown.com
   700 Louisiana St., Ste. 3400
8  Houston, Texas 77002-2730
   Telephone:  (713) 238-3000
9  Facsimile:   (713) 238-4888

10 Attorneys for Defendant
   Schering Corporation

11
                 **UNITED STATES DISTRICT COURT**
12
               **NORTHERN DISTRICT OF CALIFORNIA**
13
                      **SAN JOSE DIVISION**
14

15                                    | Case No. **5:07-cv-05550-JW (rs)**

16 RAMONA RIVERA, on behalf of          **DECLARATION OF SHAIZA**
   herself and others similarly situated, **SHAMIM IN SUPPORT OF**
17                                        **DEFENDANT SCHERING**
                        Plaintiffs,      **CORPORATION'S MOTION TO**
18        v.                             **TRANSFER VENUE TO THE**
                                         **CENTRAL DISTRICT OF**
19 SCHERING CORPORATION; and             **CALIFORNIA**
   DOES 1 to 50, Inclusive,
20                                        **The Honorable James Ware**
                        Defendants.
21                                        Date:  January 21, 2008
                                          Time:  9:00 a.m.
22                                        Location:  Courtroom 8

23                                        [Filed concurrently with Motion to
                                          Transfer and Declaration of Charles
24                                        Brown in Support Thereof]

25

26

27

28

                                    DECLARATION OF SHAIZA SHAMIM; CASE NO. 07-CV-05550

28737873

## DECLARATION OF SHAIZA SHAMIM

I, Shaiza M. Shamim, hereby declare as follows:

1.    I am an associate in the Los Angeles office of the law firm of Mayer Brown LLP, counsel of record for Defendant Schering Corporation. I am an active member in good standing of the State Bar of California.

2.    I make this declaration in support of Defendant Schering's Motion To Transfer Venue To The Central District, filed concurrently herewith. I have personal knowledge of the matters set forth in this declaration, and, if called as a witness, could and would testify competently thereto

3.    Attached hereto as exhibits are true and correct copies of the following documents:

| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| A. | Excerpts from Plaintiff's Employee Personnel File |
| B. | *Barnick v. Wyeth*, --- F.Supp.2d ----, 2007 WL 4105411 at *6-*7, CV 07-3859 SVW (Ex) (C.D. Cal. Oct. 25, 2007) |
| C. | *D'Este v. Bayer Corporation*, CV 07-3206 JFW (PLAx) (C.D. Cal. October 9, 2007) |

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed on December 2, 2007, at Los Angeles, California.

_____
Shaiza M. Shamim (SBN 229096)

28737873

# EXHIBIT A

 Schering-Plough.

**EMPLOYMENT APPLICATION**
Page 1 of 4

| TODAY'S DATE | | |
|---|---|---|
| MO. | DAY | YR. |
| 1 0 | 0 8 | 0 4 |

**INSTRUCTIONS:**    • Complete all portions of this form.    • Print using a pen

NAME (LAST NAME FOLLOWED BY A COMMA, FIRST NAME, MIDDLE INITIAL)

R i v e r a , R a m o n a A

SOCIAL SECURITY NUMBER
(To be used for reference checking)

REDACTED

ADDRESS (NUMBER AND STREET)

REDACTED

CITY: T A R Z A N A    STATE: C A    ZIP CODE: 9 1 3 5 6

| HOME PHONE NUMBER | WORK PHONE NUMBER | WORK EXTENSION | MAY WE CONTACT YOU AT WORK? (CHECK) |
|---|---|---|---|
| 8 1 8 - 7 0 5 - 6 9 2 4 | 8 1 8 - 7 0 5 - 6 9 2 4 | 01 | ☒ YES    ☐ NO |

HAS THE FDA EVER IMPOSED ANY RESTRICTION (SUCH AS A DEBARMENT ORDER) ON YOUR EMPLOYMENT IN THE PHARMACEUTICAL INDUSTRY?

☒ NO    ☐ YES    If yes, Describe: _____

• Provide driver license information only if you are applying for a position which requires you to drive a Company provided automobile.

| DRIVER'S LICENSE NO. | STATE | EXPIRATION DATE | HAVE YOU EVER BEEN BONDED? |
|---|---|---|---|
| V 7 0 3 6 9 9 1 | C A | MO. 1 1  YR. 0 5 | ☐ YES    ☒ NO |

| ARE YOU AUTHORIZED TO WORK IN THE U.S.? | WILL YOU NOW OR IN THE FUTURE REQUIRE SPONSORSHIP FOR EMPLOYMENT STATUS, E.G. H-1B STATUS? | IF YOU ARE NOT A U.S. CITIZEN, ENTER TYPE OF VISA AND EXPIRATION DATE | EXPIRATION DATE |
|---|---|---|---|
| ☒ YES    ☐ NO | ☐ YES    ☒ NO | VISA TYPE: | MO.    YR. |

| POSITION YOU ARE APPLYING FOR | DATE AVAILABLE FOR WORK | DESIRED SALARY PER YEAR | TO BE COMPLETED ONLY IF JOB RELATED | |
|---|---|---|---|---|
| Sales rep. | MO. 1 1  DAY 1 5  YR. 0 4 | 1 7 6 7 2 0 , 0 0 0 | ARE YOU WILLING TO RELOCATE? ☐ YES ☒ NO | ARE YOU WILLING TO TRAVEL? ☐ YES ☒ NO |

| TYPE OF EMPLOYMENT DESIRED (Circle) | HAVE YOU EVER APPLIED FOR A JOB AT SCHERING-PLOUGH BEFORE? | | DATE | HAVE YOU EVER BEEN EMPLOYED BY A SCHERING-PLOUGH COMPANY? | | DATE | |
|---|---|---|---|---|---|---|---|
| Regular    Summer    On-Call    (Full-Time) | ☐ YES    ☒ NO | | MO.    YR. | ☐ YES    ☒ NO | | MO.    YR. | |
| Temporary    Co-Op    Part-Time | | | | | | | |

**HIGHEST EDUCATION LEVEL**
(Circle one and show year achieved)

01. Basic Education          08. Professional Degree
02. High School Diploma      09. JD
03. Trade Certificate        10. PhD
04. Some College             11. MD
05. Associate Degree         12. DVM
(06.) Bachelor's Degree      13. Other
07. Master's Degree

YEAR ACHIEVED: 1989

**REFERRAL SOURCE**
(Circle one to indicate where you heard about Schering-Plough and enter the specific source name below)

U.   Sent Unsolicited Resume          X.   Special Recruitment
G.   Gov't Employment Agency          W.   Walk-In
P.   Private Employment Agency        C.   College
N.   Media Advertising                (O.)  Other
E.   Employee Referral

SPECIFIC SOURCE NAME: (E.G., NY TIMES, EMPLOYMENT AGENCY NAME, EMPLOYEE NAME.)

If you would like to find out about the Company's Affirmative Action Program for the Disabled, please check the box and ask a Human Resources Representative for details. ☐

If you would like to find out about the Company's Affirmative Action Program for Disabled Veterans and Veterans of the Vietnam Era, please check the box and ask a Human Resources Representative for details. ☐

All information related to any inquiry that you may make regarding either of these plans will be kept confidential and will be used only in accordance with the provisions of the Rehabilitation and Vietnam Era Veterans' Readjustment Assistance Acts.

Have you ever been convicted of a criminal offense? _____ No
(Criminal Offense means a crime, felony, misdemeanor, disorderly persons offense, or any other offense within federal, state, or local criminal/penal laws.)
If you have, provide details (including the nature of the offense and date of your conviction or the completion of your sentence) on a separate sheet.

Federal Law prohibits discrimination on the basis of age, race, sex, national origin, color, religion, disability, sexual orientation, marital and military status.

**AN EQUAL OPPORTUNITY EMPLOYER**

2587 (4/02)



# NEW HIRE/REHIRE FORM

| Employee ID #: |
| Hire Date: |
| CHRIS Entry Date: |

## TO BE COMPLETED BY EMPLOYEE

First Name: _Ramona_          Middle Initial: _A_   Last Name: _Rivera_          Suffix: ____
*(Please print)*

Home Phone: (Area Code): _805_      Number: _241 - 0625_

Address Line 1: ___ REDACTED

Address Line 2: _____          Country: _U.S.A_

City: _Thousand Oaks_      State/Province: _CA_          Postal Code: _91362_

Social Security #: _REDACTED_      Birth Date: _REDACTED_  Country of Citizenship: _U.S.A_

Are you exempt from FICA withholding as an F-1 foreign student or J exchange visitor: ☐ Yes (visa proof required) ☒ No

Marital Status: ☐ Single  ☐ Married  ☐ Legally Separated  ☒ Divorced  ☐ Head of Household  ☐ Widowed

### AFFIRMATIVE ACTION SELF-IDENTIFICATION

*This information is being requested on a strictly voluntary basis, and failure to disclose it will not subject you to any adverse action.*
*The data will be used only for statistical purposes and to measure the effectiveness of recruitment efforts.*

Ethnicity:  ☐ Caucasian  ☐ African American  ☒ Hispanic  ☐ Asian/Pacific Islander  ☐ American Indian/Alaskan Native

Gender: ☐ Male  ☒ Female      Disability Status: ☐ Not Indicated  ☐ Permanent  ☐ Temporary

Disability Type:  ☐ Not Indicated  ☐ Ambulatory  ☐ Coordinate  ☐ Declined to State  ☐ Hearing  ☐ Learning
☐ Mental/Psychological  ☐ Mobility  ☐ Sight  ☐ Speech

Military Status: n/a ☐ Active Reserve  ☐ Retired  ☐ Special Disabled  ☐ Vietnam Veteran  ☐ Veteran Other  ☒ None
Service End Date: _____

### Emergency Contact Information

First Name: _Maria_          Initial: _DJ_  Last Name: _Rivera_

Contact Relationship: _Mother_

Contact Home Phone: (Area Code): _805_      Number: _929-5146_          Extension: ____

Contact Work Phone: (Area Code): _∅_      Number: _____          Extension: ____

Contact Address Line 1: ___ REDACTED

Contact Address Line 2: _____          Country: _U.S.A_

Contact City: _Nipomo_      State/Province: _CA_      Postal Code: _93444_

Employee Signature: _M.A.R._          Date: _11/22/04_

## TO BE COMPLETED BY HUMAN RESOURCES

☐ New Hire  ☐ Rehire   Management Associate: ☐ Yes  ☐ No  Management Associate Entry Date: _____

*Rehire Service Date confirmed with Corporate Benefits on:* _____  Rehire Date: _____  Service Date: _____

Employment Type: ☐ Regular  ☐ Temporary  ☐ Summer  ☐ Coop  ☐ Flex  ☐ Quasi  ☐ Local  ☐ Expatriate

Job ID #: _____      Business Unit #: _____      Location Name: _____

Status: ☐ Full Time  ☐ Part Time      Shift: ☐ None  ☐ 1st  ☐ 2nd  ☐ 3rd      Scheduled Hours: _____

Pay Cycle: ☐ Semi-Monthly  ☐ Weekly  ☐ Hourly      Base Pay: Step Option (hourly only): _____

Salary:$ _____ per _____          Expense Account #: _____

ORG ID: _____      Mail Code: _____      Mail Stop: _____

Employee's Business Phone #: _____      Administrative Manager: _____

Human Resources: _____          Date: _____          (Revised 0"-01.01LW)

4

Schering-Plough Corporation
2000 Galloping Hill Road
Kenilworth, NJ 07033 USA
Phone +1 908 298 4000
www.schering-plough.com

 Schering-Plough

April 10, 2007

Ramona Rivera
REDACTED
Woodland Hills, CA 91367

Dear Ramona:

In view of your separation, we would like to remind you of continuing obligations to our company.

When you were first hired, you signed an agreement by which you agreed to maintain in strict confidence all information that is confidential and proprietary, and not to utilize this information for any purpose other than to perform your job responsibilities at our Company. You were also subject to our Business Conduct Policy, which imposed the same responsibilities upon you.

In the course of your employment, you had access to confidential information, which we consider to be proprietary in nature, or which may be considered to be a trade secret. A trade secret includes any information concerning our business that is not generally known to outsiders and which may be useful to our business.

Without in any way intending to be exhaustive, confidential information includes long range strategic plans; critical formulas; merger and acquisition plans and potential divestitures; licensing and co-promotion agreements; operational plans, information relating to research and development projects; information relating to the regulatory status of our products; technical information (such as product or process specifications, manufacturing processes, formulations, designs, unique software, identity of vendors and suppliers of unique materials; marketing information (such as customer lists, schedules of new product availability and delivery periods, pending price changes, strategic plans, selling practices, and marketing forecasts; financial information (such as budgets, sales data, product costs and profit margins); organizational information (such as plans relating to our facilities, realignment of operations or personnel, or telephone directories); and Human Resources information (such as sensitive personal data relating to employees, salaries and compensation, medical records, performance appraisals or reviews, personnel files, or hotline complaints), or confidential information from third parties which is the subject of a confidentiality agreement with that third party.

We want to remind you that your obligations of confidentiality and non-use continue even though you will no longer be employed by our Company. You are, of course, free to utilize any

-2-

information that is in the public domain, as well as your professional expertise, in carrying out your work for your new employer. If you have any questions about the nature and extent of your ongoing obligations of confidentiality, or if you require a copy of the agreement you signed when you were hired or the Business Conduct Policy, please contact me immediately.

We also wish to remind you that you must return all tangible company property before your last day of employment. If you discover that you inadvertently retained any such property, please send it to me as soon as possible. Tangible company property includes, but is not limited to, laboratory notebooks, reports, protocols, data sheets, computer programs and hardware, biological material, compounds, and marketing and business plans.

Either the intentional or inadvertent disclosure of our confidential information could subject our company to serious competitive disadvantage and irreparable harm. You should also know that the misuse of our confidential information could subject both you and your new employer to substantial liability under the Economic Espionage Act of 1996, 18 U.S.C.A. §1831, et seq. and various state laws. It is important that you understand that we are prepared to exercise all lawful means to protect our business interests, including the filing of a court action, should it become necessary to do so. We are hopeful that this letter is simply a prudent precaution on our part, that you will comply fully with your future responsibilities and that it will be unnecessary for us to take any such action to ensure that you do.

Again, if you have any questions about your ongoing commitments to our company, please contact me immediately. We wish you continued success in your new endeavors.

Sincerely,



Liam Murray
Manager, Human Resources

6

# EXHIBIT B



THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

✓ Docketed
___ Copies / NTC Sent
✓ JS - 5 / JS - 6
___ JS - 2 / JS - 3
___ CLSD

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM BARNICK, | ) | Case No: CV 07-3859 SVW (Ex) |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | WYETH'S MOTION FOR SUMMARY |
| v. | ) | JUDGMENT [20] |
| | ) | |
| WYETH, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**I.        Factual and Procedural Background**

This is a uncertified class action by Plaintiff William Barnick ("Plaintiff") against Defendants Wyeth and Does 1 to 50 alleging various wage-related claims. Defendant Wyeth ("Defendant") develops, manufactures, and sells pharmaceutical products. (UF 1) On December 30, 1980, Plaintiff was hired by Defendant to its "sales staff" as a pharmaceutical representative or a "territory manager." (UF 5) The position required "a minimum of 1-2 years of selling experience." (UF15) The Plaintiff retired from this position voluntarily on February 28, 2006. (UF 78) During the time period relevant to this

8

dispute, Plaintiff worked in Wyeth's vaccine sales division in California. (UF 32) As part of this position, from May 9, 2003 to the end of his employment, Plaintiff visited or called upon physicians on a pre-assigned list he created with Wyeth and discussed with these physicians various Wyeth pharmaceutical products, in particular vaccines Prevnar and FluMist and drugs Altace and Protonix.(Barnick Dec. at  6; Mills Dec. Ex. 1 at 76-79). In order to perform this work, Plaintiff spent 45-48 hours a week in the field. (UF 17).Plaintiff was required to make a certain number of calls on selected doctors within a set period of time and additionally had a daily quota of calls he was required to make (Barnick Dec. at 6). Plaintiff was also expected to be working at least from 8:30 AM to 5:00 PM on weekdays, but stated in his deposition that no one at Wyeth controlled his hours.  (Barnick Dec. at 5; Mills Dec. Ex. 1 at 67) Plaintiff was very rarely subject to any direct supervision, but was required to log his calls with physicians at the end of each working day, file weekly activity reports, check his voice mail three times a day, and computer synchronize once per day. (Barnick Dec. at 6)

Plaintiff's essential function was "to effect sales by educating and guiding health care professionals in their purchase and prescription of Wyeth's products and by promoting treatment practices that are consistent with approved indications." (UF 4) Wyeth expected Plaintiff to generate sales of their product. (UF 36) Plaintiff explained in his declaration that his "primary responsibility was to generate revenue for Wyeth by focusing on visiting specific doctors in my assigned territory to persuade them to prescribe the maximum number of vaccine doses or to prescribe pharmaceutical products to the

greatest extent possible; my efforts were not aimed at promoting sales generally." (Barnick Dec. at 5)

Plaintiff did not as a general matter directly sell any Wyeth products to physicians. Occasionally, Plaintiff provided order forms to physicians to use to place orders from Wyeth for vaccines such as Prevnar and FluMist. Sometimes Plaintiff filled these order forms out for the physicians. If he did not have an order form with him, he gave the physician an 800 number to order vaccine dosages from Wyeth. (UF 50) Physicians would then order the vaccines from Wyeth and prescribe and administer the vaccines to patients directly at the physician's office. (Barnick Decl. at 6)  Plaintiff clarifies in his Declaration that he never provided order forms or information for Altace or Protonix. (Barnick Decl. at 8) Altace and Protonix were instead prescribed by physicians to patients who presumably ultimately purchased the drugs through a pharmacy.[1] (Barnick Dec. at 4-5)

---

[1] Parties dispute the amount of time devoted by Plaintiff to providing information about each Wyeth product. Plaintiff alleges based on his own declaration that he devoted 35-40% of his time to providing information on Prevar and FluMist and 60-65% of his time to providing information on Altace and Protonix and other drugs. (Plaintiff Opp. at 3). Defendants argue this assertion is contradicted by Plaintiff's deposition testimony and Barnick's Incentive Compensation Reports which indicate Plaintiff spent 100% of his time selling Prevnar in 2005 and at least 80% of his time selling Prevnar and FluMist through March 2004. (Def. Ev. Obj. 6). With regard to the deposition testimony, neither party has attached the relevant page and so the Court is unable to assess whether there is indeed a contradiction. If the declaration genuinely conflicted with prior deposition testimony as opposed to merely clarifying it and the Court considered the conflict to result from a sham, then the Court would be compelled to reject the declaration as to that factual issue. See Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). However, it cannot do so without the relevant deposition testimony before it. With regard to the Incentive Compensation Reports, these create a genuine dispute of fact. However, as discussed below, this dispute is ultimately not relevant as Plaintiff's activities with regard to all products should be construed as sales activities.

1

2      Plaintiff was hired as a sales staff member by Wyeth and referred

3   to himself as a salesperson in his deposition. (UF 7, 19-20)[2]

4   Plaintiff was trained in sales techniques at numerous sales

5   conferences throughout his employment where territory managers

6   discussed sales data and sales strategies. (UF 11-13)  In addition to

7   a guaranteed yearly salary, Plaintiff received additional compensation

8   tied to the number of sales of Wyeth's products he assisted in

9   generating.[3] (UF 8-10) Half of Plaintiff's total evaluation by Wyeth

10  was based on his meeting sales objectives for Wyeth products. (UF 28)

11  In Wyeth's evaluation of Plaintiff, he was praised for his ability to

12  "consistently close." The evaluation also noted that the Plaintiff

13  "consistently asks for business." (Mills Dec. Ex. 8 at 218). In his

14  deposition, Plaintiff admitted that he "asked for the business" during

15  his calls and this was part of Wyeth's selling strategy (Mills Dec.

16  Ex. 1 at 59). However, in his later declaration Plaintiff clarifies

17  that he never took any commitments to prescribe Altace or Protonix

18

19  ─────────────────────────────

    [2] Plaintiff in his subsequent Declaration states that "he did not
20  actually sell Altace or Protonix." (Barnick Decl. at 3). This could be
    viewed as a contradiction of his prior deposition testimony declaring
21  he sold products. This would counsel its rejection. See Kennedy 952
    F.2d at 266. However, Plaintiff's declaration is likely better viewed
22  instead as Plaintiff's attempt to speak more precisely about the
    nature of his various activities than he spoke in his deposition.
23  Nonetheless, Plaintiff's general characterization of his activities in
    his deposition does have some probative value as to the nature of his
24  position with Wyeth.  However, it cannot remotely be viewed as
    dispositive. Harris v. Superior Court, 154 Cal. App. 4th 164, 189 (Cal
25  Ct. App. 2007) ("A title alone is of little or no assistance in
    determining the true importance of an employee to the employer or his
26  exempt or nonexempt status. . . .").
    [3] The exact mechanics of how Wyeth tied compensation to sales is
27  unclear from the attached portions of Plaintiff's deposition, but it
    appears that territory managers' compensation is determined in part by
28  overall sales generated in their territory. (Mills Dec. Ex. 1 at 14)

(Barnick Dec. at 8).[4] Plaintiff did occasionally solicit new business for Wyeth by identifying new doctors in his territory to contact. (Mills Dec. Ex. 1 at 50-52)

Plaintiff filed this suit in California Superior Court on May 9, 2007 as a class action. Plaintiff alleges in his First through Fifth Causes of Action that Defendants failed to pay overtime wages as required by California Labor Code Section 510, failed to provide meal and rest breaks as required by California Labor Code Section 512, failed to itemize wage statements and accurately report total hours worked by Plaintiff in compliance with California Labor Code Section 226(a), and failed to pay waiting time wages under California Labor Code Section 203. In its Sixth Cause of Action, Plaintiff alleges unfair competition pursuant to Business and Professions Code Section 17200. (Plaintiff Comp. at 10-16) Defendant Wyeth removed the suit to federal court under the Class Action Fairness Act of 2005 and filed an answer on June 14, 2007.

Defendant Wyeth filed the present Motion for Summary Judgment on September 17, 2007. Defendant seeks summary judgment with regard to all of Plaintiff's claims on a number of grounds. However, the only ground that needs to be discussed in this memorandum is that Plaintiff was exempt from the relevant requirements of the California Labor Code because he was an "outside salesperson." Defendant's

---

[4] The Court cannot determine from the excerpted pages of the deposition whether Plaintiff's statements regarding asking for business on calls to doctors were in reference to all calls or merely those relating to vaccines. Without this information, the Court cannot regard Plaintiff's statements on this point as contradicting his later declaration that he never sought commitments to prescribe Altace or Protonix. Therefore, the Court regards Plaintiff's taking of commitments to prescribe Altace or Protonix from physicians as a disputed fact.

alternative ground that Plaintiff was exempt because his position was predominantly "administrative" need not be reached because Plaintiff's position is properly classified as that of an "outside salesperson." Additionally, Plaintiff concedes that his Fourth Cause of Action under California Labor Code Section 226(a) is barred by the statute of limitations. (Plaintiff Opp. at 2 fn. 2)

As Plaintiff is properly classified as an exempt outside salesperson and has conceded his Fourth Cause of Action, Defendant's Motion for Summary Judgment should be GRANTED as to all of Plaintiff's claims.

## II.      Analysis

### A.   Standard for Summary Judgment

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 (9th Cir. 1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp v. Catrett, 477 U.S. 317, 323-24 (1986). That burden may be met by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. See Id. at 323-34; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1968). "A

scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000). Only genuine disputes - where the evidence is such that a reasonable jury could return a verdict for the nonmoving party - over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248; see also Aprin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must identify specific evidence from which a reasonable jury could return a verdict in its favor).

     B.    Application of the Outside Sales Exemption

          Under California Labor Code Section 510, an employer is required to pay premium wages to its employees for hours worked in excess of those statutorily required. Cal. Lab. Code § 510. Additionally, under California Labor Code Section 226.7, "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Cal. Lab. Code § 226.7. Under the applicable Industrial Welfare Commission ("IWC") wage order and California Labor Code § 1171, outside salespersons are exempt from statutory overtime and meal and rest period requirements. Cal. Lab. Code § 1171; Wage Order No. 4-2001(1)(C). The determination of whether an employee is an outside salesperson is "a mixed question of law and fact." Ramirez v. Yosemite Water Co., Inc., 20 Cal. 4th 785, 794 (Cal. 1999). Though, as noted above, there is some factual dispute as to the composition of Plaintiff's duties, there is sufficient agreement for the Court to

determine as a matter of law that Plaintiff is an exempt outside salesperson. This defeats Plaintiff's First through Third Causes of Action. Furthermore, as Plaintiff's Fifth and Sixth Causes of Action for failure to pay waiting time wages and unfair competition, respectively, are necessarily dependant on the success of the First through Third Causes of Action, Plaintiff's exemption ultimately defeats all his non-conceded claims. <u>See</u> Cal. Lab. Code § 203; Bus. and Prof. Code § 17200; <u>Krantz v. BT Visual Images, L.L.C.</u>, 89 Cal. App. 4th 164, 178 (Cal. Ct. App. 2001).

An outside salesperson is defined by the IWC as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Wage Order No. 4-2001(2)(M). In classifying workers under the exemption, the Court must apply a "quantitative" approach that looks at whether the employee spends more than fifty percent of his time engaged in sales activities. <u>Id.</u> 797. "Under California law, exemptions from statutory mandatory overtime provisions are narrowly construed." <u>Ramirez</u>, 20 Cal. 4th at 795. Furthermore, "the employer bears the burden of proving the employee's exemption." <u>Id.</u>

The policy rationale behind the outside salesperson exemption has been somewhat explicated by the California Division of Labor Standards Enforcement ("DLSE") via opinion letter, which noted that outside salespersons generally "set their own time, and they're on the road, they call on their customers . . . Rarely [does the employer] know what they're doing on an hour-to-basis." DLSE Op. Letter, Sept. 8, 1998. Hence, it is "very difficult to control their hours and working

conditions." Id.[5] The Tenth Circuit discussed the policy behind such exemptions generally:

> The reasons for excluding an outside salesman are fairly apparent. Such salesmen, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. [sic] In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

Jewel Tea Co. v. Williams, 118 F.2d 202, 207 -208 (10th Cir. 1941).

There is no dispute that Plaintiff worked away from his employer's place of business more than half his working time. (UF 17-18). Instead, Plaintiff asserts he cannot be classified as an outside salesperson because he did not engage in sales, but instead merely "influence[d] physicians to prescribe Wyeth products." (Plaintiff Opp. at 9) Plaintiff argues that, at least with regard to Altace and Protonix, he did not engage in actual selling as the physicians he spoke to were not the actual purchasers of Wyeth's products. The physicians instead merely prescribed the products to patients who were

---

[5]  "'Courts defer to the agency charged with enforcing a regulation when interpreting a regulation because the agency possesses expertise in the subject area.'" Maddock v. KB Homes, Inc. 2007 WL 2221030, at *9 -10 (C.D. Cal. July 9. 2007) (quoting Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949, 958 (2005)).

the ultimate purchasers. Furthermore, Plaintiff denies that he took any commitments from physicians to even prescribe Altace or Protonix.

A Western District of Michigan federal court has identified several indicia relied on by federal courts to support a determination that an employee should be categorized as an outside salesperson:

> (1)   "[T]he job was advertised as a sales position and the employee was recruited based on sales experience and abilities."

> (2)   "Specialized sales training"

> (3)   "Compensation based wholly or in significant part on commissions"

> (4)   "Independently soliciting new business"

> (5)   "[R]eceiving little or no direct or constant supervision in carrying out daily work tasks"

Nielsen v. Devry, Inc., 302 F. Supp. 2d 747, 756-58 (W.D. Mich. 2003). Various federal and state courts have utilized one or more of these indicia in applying the outside salesperson exemption. See, e.g., Hodgson v. Klages Coal & Ice Co., 435 F.2d 377, 382-84 (6th Cir. 1970); Wirtz v. Charleston Coca Cola Bottling Co., 356 F.2d 429-30 (4th Cir. 1966); Wirtz v. Atlanta Life Ins. Co., 311 F.2d 646, 648 (6th Cir. 1963); Jewel Tea Co., 118 F.2d at 208; Palmieri v. Nynex Long Distance Co., 2005 WL 767170, at *11-14 (D. Me. 2005); Olivo v.

GMAC Mortg. Corp., 374 F. Supp. 2d 545, 550 (E.D. Mich. 2004); Fields
v. AOL Time Warner, Inc., 261 F. Supp. 2d 971, 975 (W.D. Tenn. 2003);
Hodgson v. Krispy Kreme Doughnut Co., 346 F. Supp. 1102, 1104-07
(D.C.N.C. 1972); Bradford v. Gaylord Products, 77 F. Supp. 1002, 1004-
05 (D.C. Ill. 1948); Nunneley v. Farmers Ins. Exchange, 564 P.2d 231,
235 (Okla. 1977). These indicia were developed for application of the
Federal Labor Standards Enforcement Act's outside salesperson
exemption and not the analogous provision of the California Labor Code
at issue here. However, as the California Labor Code was modeled on
the FLSA, other courts' interpretation of the FLSA has persuasive
authority for this Court's interpretation of the California Labor
Code. Monzon v. Schaefer Ambulance Service, Inc., 224 Cal. App. 3d 16,
31 (Cal. Ct. App. 1990) ("California courts have recognized that
California's wage laws are patterned on federal statutes and that the
authorities construing those federal statutes provide persuasive
guidance to state courts."); Nordquist v. McGraw-Hill Broadcasting
Co., 32 Cal. App. 4th 555, 562 (Cal. Ct. App. 1995) ("Because the
California wage and hour laws are modeled to some extent on federal
laws, federal cases may provide persuasive guidance.").

Under these factors, it appears to the Court that Plaintiff
clearly qualifies as an outside salesperson. Plaintiff was hired on
the basis of his sales experience for a job referred to both by
himself and his employer as a sales position. Throughout his
employment for Wyeth, Plaintiff received regular specialized sales
training at sales conferences. Plaintiff was expected to and did in
fact occasionally solicit new business for Defendant. Most
significantly, Plaintiff's pay was determined at least in part on the
basis of sales he generated. Additionally, Plaintiff, despite certain

restrictions placed on his activities by Wyeth, received virtually "no direct or constant supervision in carrying out" his daily work. Nielsen, 302 F. Supp. at 758. Though the set of physicians Plaintiff contacted was at least in part pre-determined by Defendant and Plaintiff was given daily call quotas, Plaintiff was free to determine from day to day which particular physicians he contacted and when. Similarly, though Plaintiff was required to frequently report his activities to Wyeth, he was almost always unsupervised during his usual working day. Federal courts have found workers subject to daily reporting requirements and call quotas to be sufficiently unsupervised to qualify as outside salespersons. Krispy Kreme, 346 F. Supp. at 1104-6; Fields, 261 F. Supp. 2d at 975; see also Palmieri, at *13 ("[T]he caselaw indicates that an employer may impose some controls on the client base--such as relegation to a certain sales territory-- without transforming the character of an employee as an outside salesman for purposes of the federal overtime exemption.").

The Western District of Michigan federal court, relying on Department of Labor regulations administering the FLSA, also adopted a further method for determining whether an employee should be categorized as an outside salesperson in close cases:

> In borderline cases the test is whether the person is actually engaged in activities directed toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling. If his efforts are directed toward stimulating the sales of his company generally rather than the consummation of his own specific sales his activities are not exempt.

Nielsen, 302 F. Supp. 2d at 759 (quoting C.F.R. § 541.504(b)(2)).

Other federal courts have also at least implicitly adopted this method

for analyzing the outside salesperson exemption under the FLSA. See,

e.g., Ackerman v. Coca-Cola Enterprises, Inc., 179 F.3d 1260-1266

(10th Cir. 1999); Skipper v. Superior Dairies, Inc., 512 F.2d 409,

413-14 (5th Cir. 1975); Wirtz v. Keystone Readers Serv., Inc., 418

F.2d 249, 260-61 (5th Cir. 1969); Reynolds v. Salt River Valley Water

Users Ass'n, 143 F.2d 863, 868 (9th Cir. 1944); Clements v. Resource

Consultants, Inc. 2006 WL 1579634, at *5 (D. Utah June 2, 2006);

Cuviller v. Alta Colleges, Inc., 2003 U.S. Dist. LEXIS 26648, at *3-5

(C.D. Cal. Nov. 7, 2003). Applying this method, Plaintiff would

clearly be regarded as having engaged in the selling of Prevnar and

Flu-Mist, each of which Plaintiff took orders for. However, Plaintiff

argues that under this standard he cannot be considered as having sold

Altace or Protonix. Plaintiff argues this is the case first because

the physicians he called upon were not the ultimate purchasers of

Wyeth's products and hence had no ability to consummate any sale.

Second, Plaintiff essentially argues that even if the physicians could

be regarded as the ultimate purchasers, Plaintiff asserts he never

took any commitments from physicians to prescribe Wyeth products and

hence never consummated even an indirect sale. (Plaintiff Opp. at 11-

12)

The Court first notes that given that every one of the indicia

discussed above points to the Plaintiff's categorization as an outside

salesperson, the Court does not consider this a "borderline" case

prompting this second mode of analysis. However, assuming *arguendo*

that the Court does consider this a close case, the Court finds

Plaintiff's application of this mode of analysis unpersuasive. With

regard to Plaintiff's first contention that physicians are not the ultimate purchasers of Wyeth's products, this is clearly a distinction without a difference. Nothing in the language of the outside salesperson exemption requires an exempted employee to engage in direct as opposed to indirect sales. Though it is true physicians never actually buy Wyeth's prescription products, it is clearly they who control the product's ultimate purchase. Because physicians determine whether or not a patient will buy a prescription product, it is they who are appropriately the target for sales efforts and appropriately considered Wyeth's customers. Plaintiff's contrary analysis would produce the absurd conclusion that Wyeth does not engage in any sales activity regarding its prescription products merely because its efforts are rationally aimed at those determining the product's purchase rather than the directed buyers of the product. Furthermore, Plaintiff's characterization of his employment on this basis is entirely divorced from the underlying concerns motivating the exemption; i.e. the commissioned pay received by salespersons and the individual character of their work. The Court cannot endorse such an illogical elevation of form over substance. See Gina D'Este, et al. v. Bayer Corporation, et al., No. 07 Civ. 3206, slip op. at 5 (C.D. Cal. Oct. 9, 2007) (relying on similar reasoning to find that a pharmaceutical representative was an outside salesperson appropriately directing her sales efforts at physicians).

The Court finds Plaintiff's second contention similarly unconvincing. Plaintiff appears to assert that though his efforts in speaking to particular physicians about Altace and Protonix were clearly directed at maximizing the products' prescription by those particular physicians, and though he was compensated based on his

success in accomplishing this objective, because Plaintiff did not actually request some sort of commitment from physicians during his contact with them he was engaged in only product promotion rather than sales. Though this is likely a correct application of the distinction between promotion and sales laid down by the Department of Labor and several federal courts with regard to the FLSA, the Court simply does not find this definition of sales persuasive and so refuses to apply it to California's outside salesperson exemption. If an employee directs his efforts at persuading a particular customer to purchase a product and is compensated on the basis of his success in doing so then the employee is clearly engaged in sales activity and not mere general promotion of the product. Whether or not the employee at the close of the conversation requests some sort of commitment rather than leaving the customer to make that decision at a later time should not by itself transform the general nature of the employee's efforts from sales to promotion. This is particularly so when, as in the case, it has not been alleged that any other employee will affirmatively make further contact with the customer to consummate the sale. The distinction between sales and promotion is more logically made dependent on whether an employee's efforts are directed at persuading particular individuals to purchase a product rather than the general public and whether an employee is compensated based on the employee's success in securing purchases from particular individuals. This division seems to better comport both with a common understanding of sales work and, more importantly, with the policies behind the outside salesperson exemption. Plaintiff's stated failure to ask for commitments at the end of his calls to physicians does not in any way make the application of the protections of the California Labor Code

more appropriate and therefore should not alone bring him within their purview when he would otherwise not be.[6]

### III.     Conclusion

As Plaintiff is properly classified as an exempted outside salesperson under the relevant provisions of the California Labor Code and has conceded his Fourth Cause of Action, Defendant's Motion for Summary Judgment should be GRANTED as to all of Plaintiff's claims.

IT IS SO ORDERED.

DATED:  _10/24/07_

_(signature)_

(STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff filed an Application to File a Sur-reply to Defendant's Reply on this Motion on October 19, 2007. The Court does not need to reach this Application as it has reviewed the proposed Sur-reply and determined it would not affect the Court's analysis if admitted. The new cases cited by Plaintiff applying the FLSA outside salesperson exemption have been considered by the Court and found to be unpersuasive for the reasons discussed above. (Plaintiff Sur-rep. at 3-5) Furthermore, the statements made by the Defendant in prior litigation that Plaintiff seeks to admit against Defendant would not change the Court's analysis. Even if regarded as admissible, Wyeth's statements in the prior litigation only assert that pharmaceutical representatives' efforts are not the major factor in determining physicians' prescription choices. (Plaintiff Sur-rep. at 5-6) This is entirely irrelevant as the inquiry under the outside salesperson exemption is what the objectives and duties of the employee in question are, not how effective the employee is in meeting its objectives.

# EXHIBIT C

AS REQUIRED BY PROP. RULE 77(d).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PRIORITY SEND

## CIVIL MINUTES -- GENERAL

Case No.  **CV 07-3206-JFW (PLAx)**                    Date:  October 9, 2007

Title:     Gina D'Este, et al. -v- Bayer Corporation, et al.

**PRESENT:**

### HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

**Shannon Reilly**                         **None Present**
**Courtroom Deputy**                        **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**      **ATTORNEYS PRESENT FOR DEFENDANTS:**
None                                        None

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING DEFENDANT'S MOTION FOR
                                   SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
                                   PARTIAL SUMMARY JUDGMENT
                                   [filed 8/31/07; Docket #32]**

**ORDER DENYING PLAINTIFF'S FEDERAL RULE 56(f)
MOTION [filed 9/11/07; Docket #62]**

**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AS MOOT [filed 8/14/07; Docket #22]**

**ORDER VACATING SCHEDULING CONFERENCE**

ENTERED
CLERK, U.S. DISTRICT COURT

OCT - 9 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                                 DEPUTY

On August 31, 2007, Defendant Bayer Corporation ("Defendant" or "Bayer") filed a Motion
for Summary Judgment or, in the Alternative, Partial Summary Judgment.  On September 10,
2007, Plaintiff Gina D'Este ("Plaintiff") filed her Opposition.  On September 17, 2007, Defendant
filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15,
the Court found the matter appropriate for submission on the papers without oral argument.  The
matter was, therefore, removed from the Court's September 24, 2007 hearing calendar and the
parties were given advance telephonic notice.  After considering the moving, opposing, and reply
papers, and the arguments therein, the Court rules as follows:

## I.    Factual Background

Bayer develops, manufactures, and sells pharmaceutical products worldwide.  Bayer
employs a number of pharmaceutical representatives ("PR") who are responsible for promoting
and selling Bayer's prescription pharmaceutical products to medical care providers, including
primary care physicians, specialists, and hospitals.  The PRs each have different titles depending

25

on their level of seniority and the type of medical care provider that they are responsible for "calling on" in their assigned territory. For example, "pharmaceutical sales representatives" or "PSRs" are responsible for calling on primary care doctors in their assigned territory. "Anti-infective specialty" or "AIS" representatives are more senior than PSRs and are assigned to call on specialists and certain assigned hospitals within their territory. All PRs receive a salary and are also paid incentive compensation based on their sales.

Plaintiff was hired by a Bayer affiliate, Miles, Inc., as a PSR in November of 1991. Throughout her employment with Bayer, Plaintiff was promoted several times. In April of 2002, she received a promotion to the position of Senior AIS Representative II, a position which she held until her employment with Bayer terminated on November 1, 2004. As a Senior AIS Representative, Plaintiff's was required to:

> Successfully promote and sell specified [Bayer] anti-infective products to targeted offices and hospital-based, high-potential physicians including specialists . . . and those physicians with an acute interest in respiratory tract infections. The purpose of this position is to increase call frequency and rapport with these targeted physicians; to increase sales and market share of Bayer anti-infective products in the respiratory and hospital market place; and to build Bayer's image as a leader in the anti-infective market.

Exhibit 19 to D'Este Dep. In order to qualify for the position of Senior AIS Representative, Bayer required that Plaintiff demonstrate "[a]dvanced selling skills" and have "an accomplished aptitude in sales." *Id.*

During her deposition, Plaintiff testified that she and other PRs were instructed "in our training and meetings that we were to increase the prescribing habits of doctors." D'Este Dep. at 51:7-9. Plaintiff explained that to accomplish this goal, she was trained by Bayer to engage in "consultative selling" - an approach to sales in which she would meet with or "call on" medical professionals and "try to promote a dialogue" about "how they treat a patient or why they might not use your product . . . [a]nd from those responses, try and find a need or a fit where your product would be utilized in their practice." *Id.* at 213:8-11. Plaintiff stated that the "doctor is a customer" and that she would provide the doctors with "sales brochures" and would also use other "sales pieces" when meeting with them. *Id.* at 51:13. At the end of each meeting or "call," Plaintiff would try to "close" the doctor, "[m]eaning that at the end of each call with your doctor or account, that you would get a commitment to either prescribe your drug in a certain patient type that was mentioned in the sales piece or the promotional brochure." *Id.* at 55:2-6. Upon receiving a commitment from a doctor to prescribe Bayer products, Plaintiff would follow up with that doctor or the doctor's staff on a regular basis to ensure that the doctor was in fact writing more prescriptions for Bayer products. *Id.* at 271:17-23.

In addition to calling on physicians, Plaintiff also testified that she spent about 10% of her time calling on hospitals. She explained that the purpose of calling on hospitals was "to get the company products on formulary." *Id.* at 86:15-20. For example, Plaintiff successfully entered into a contract with a hospital to use Bayer products on its formulary:

> Q.   Was - Sherman Oaks Hospital, did they use Bayer products on
>      their formulary?
> A.   Yes
> Q.   Is that something that you accomplished as an Anti-Infective
>      Specialist Sales Representative II?
> A.   To the best of my recollection, I believe that I did actually sign that
>      contract with Sherman Oaks Hospital.

*Id.* at 94:2-11.

Plaintiff's performance as a PR was "measured against established competencies and predetermined sales and professional objectives." Exhibit 19 to D'Este Dep. Specifically, Plaintiff was given "sales goals" and "had a quota that [she] had to attain." D'Este Dep. at 70:13-15. Plaintiff was evaluated on her "Selling Skills: The ability to develop and deliver persuasive sales presentations using accurate and timely product information that positively influences the customers [sic] purchasing decision while building and maintaining collaborative relationships." Ex. 4 to D'Este Dep. During her employment with Bayer, Plaintiff received reviews which commended her on her ability to increase sales of Bayer products with both doctors and hospitals: "Gina positively influences customer's purchasing decisions through collaborative relations with the entire staff (always informing the staff on product information, dosing and managed care issues so they can help drive the doctor to use Bayer products)" and "Gina has great success in the Hospital sector of her territory not just maintaining Avelox PO/IV sales but increasing them." D'Este Dep. at 50:11-16; 112:19-25.

On April 25, 2007, Plaintiff filed a Complaint in Los Angeles County Superior Court against Defendant alleging the following claims for relief: (1) Failure to pay overtime in violation of California Labor Code § 11; (2) Failure to provide meal break in violation of California Labor Code § 226.7; (3) Failure to allow rest breaks in violation of California Labor Code § 226.7; (4) Waiting time penalties under California Labor Code § 203; and (5) Violation of California Business &Professions Code § 17200, *et seq.* In her Complaint, Plaintiff alleges, *inter alia,* that during the period of her employment with Bayer, she worked more than forty hours per week and eight hours per day on a regular basis without receiving overtime compensation. Plaintiff claims that she was a "non-exempt" employee, and that Defendant's failure to pay her overtime wages violated the California Labor Code. Plaintiff brought this action on behalf of herself and a class of similarly-situated pharmaceutical representatives who were also allegedly misclassified as exempt from the overtime requirements of the California Labor Code. On May 16, 2007, Defendant removed this action to this Court. Thereafter, Defendant filed the present Motion for Summary Judgment.

## II.    Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). A party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot

be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III. Discussion

Section 510 of the California Labor Code requires employers to compensate non-exempt employees for time worked in excess of statutorily defined maximum hours. *See* Cal. Labor Code § 510. Section 1171 expressly excludes from the overtime requirements "any individual employed as an outside salesman." Cal. Labor Code § 1171. The California Industrial Welfare Commission ("IWC"), the agency charged with implementing Section 1171, has defined the term "outside salesperson" as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Cal Code Regs. tit. 8, § 11070; *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785 (1999).

In its Motion for Summary Judgment, Bayer claims that Plaintiff and the other PRs employed by Bayer are "outside salespeople" under Section 1171 and are therefore exempt from the overtime requirements of Section 510. In her Opposition, Plaintiff does not dispute that she "customarily and regularly work[ed] more than half the working time away from the employer's place of business," but argues that the "outside salesperson" exemption is inapplicable to PRs because the PRs only provide doctors with information and do not actually "sell" anything to those doctors.[1]

---

[1] In conjunction with her Opposition, Plaintiff filed a Federal Rule 56(f) Motion requesting that the Court either deny Defendant's Motion for Summary Judgment, or, in the alternative, grant

The Court disagrees with Plaintiff's narrow interpretation of "outside salesperson" and finds that the PRs employed by Bayer, including Plaintiff, were properly classified as exempt from the overtime requirements of Section 510. Plaintiff was hired by Bayer and then evaluated throughout her employment with Bayer on her ability to "increase sales of [Bayer] products (i.e. change prescribing behavior [of medical providers])." Ex. 4 to D'Este Dep. Because patients are unable to obtain Bayer's products directly and must have a prescription from a physician, Bayer directs the focus of its sales efforts at the doctors who are responsible for making the purchasing decision on behalf of the patient. As Plaintiff admitted during her deposition, the doctors are the "customers" of Bayer and Plaintiff's job was to "close" the doctors in her territory by getting them to "commit" to writing more prescriptions for Bayer's products. Each prescription filled by a patient is a "sale" for Bayer, and Plaintiff was paid commissions for the increased sales from filled prescriptions written by the doctors in her territory.

In addition to reviewing the nature of the transaction at issue, whether or not a particular transaction qualifies as a "sale" can also be analyzed based on the capacity of the parties to the transaction. "The buyer . . . must have the capacity to purchase or place an order for a product or service" while "[t]he seller . . . must have the capacity to consummate sales, take orders, or obtain commitments from the buyer for the purchase of the employer's services." *Nielsen v. Devry, Inc.*, 302 F. Supp. 2d 747, 760 (W.D. Mich. 2003).[2] In this case, the "buyer" is the doctor who has the capacity to "place an order" for Bayer's product by writing a prescription for a patient. Plaintiff

---

a continuance of the hearing on Defendant's Motion to permit Plaintiff to conduct additional discovery which Plaintiff claims is necessary to oppose Defendant's Motion. A party invoking Rule 56(f) "bears the burden of showing 'what facts [it] hopes to discover to raise a material issue of fact.'" *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) (quoting *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1306, n.1 (9th Cir. 1986)).

With respect to Defendant's argument that Plaintiff is exempt from the overtime requirements of the Labor Code as an "outside salesperson," Plaintiff claims that she needs discovery on the following issue: "Whether Plaintiff, when she worked for Bayer, engaged in selling or obtaining orders or contracts for products, services or use of facilities. Plaintiff denied that she engaged in any such work." Plaintiff's Rule 56(f) Motion at 4.

As an initial matter, Plaintiff's request does not specify the facts that she hopes to discover to raise a material issue of fact. Moreover, the Court's decision on Defendant's Motion is based upon Plaintiff's own description during her deposition of her job duties and the work she performed for Bayer. As a result, the issue of whether Plaintiff's job duties, as she describes them, fall within the definition of an "outside salesperson" is a question of law for the Court to decide. Accordingly, the Court finds that additional discovery would not assist Plaintiff in opposing Defendant's Motion and Plaintiff's Rule 56(f) request is **DENIED**.

[2] "California courts have recognized that California's wage laws are patterned on federal statutes and that the authorities construing those federal statutes provide persuasive guidance to state courts." *Monzon v. Schaefer Ambulance Service, Inc.*, 224 Cal. App. 3d 16, 31 (1990); *see also Nordquist v. McGraw-Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 562 (1995) ("Because the California wage and hour laws are modeled to some extent on federal laws, federal cases may provide persuasive guidance.").

admitted during her deposition that as a PR, she was responsible for obtaining commitments from the doctors she called on to write additional prescriptions or orders for Bayer's products.

The Court's finding that PRs are properly classified as "outside salespeople" is consistent with the spirit and purpose of the exemption. As the Tenth Circuit has explained:

> The reasons for excluding an outside salesman are fairly apparent. Such salesm[a]n, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

*Jewel Tea Co. v. Williams*, 118 F.2d 202, 207-08 (10th Cir. 1941). Indeed, the lack of supervision and inability to confirm the number of hours worked by an employee is of particular importance in the case of PRs such as Plaintiff. Although Plaintiff claims that she regularly worked "a lot of overtime" during her employment with Bayer, she also admitted during her deposition that she "didn't know" whether she had subtracted the time she spent during the weekdays on personal matters, such as pilates classes, haircuts, and waxing appointments. *See* D'Este Dep. at 347:12-348:19.

Quite simply, Plaintiff and the other PRs employed by Bayer were hired and evaluated based on their abilities as salespeople, they received training throughout their employment on sales techniques, and their earnings were based in part on a commission determined by the total amount of products sold in their territory which were a direct result of the prescriptions written by the doctors they called on. Accordingly, the Court finds that there are no genuine issues of material fact and concludes as a matter of law that Plaintiff was properly classified by Bayer as an outside salesperson under Section 1171 and was therefore exempt from the overtime requirements of Section 510.[3] Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's First Claim for Relief.

In light of the Court's finding that Plaintiff was properly classified as exempt as an "outside salesperson" under Section 1171, Defendant is also entitled to judgment as a matter of law on Plaintiff's remaining claims for relief for additional violations of the California Labor Code and for violation of California Business and Professions Code § 17200. *See* Cal. Labor Code § 1171; *Cai v. Fishi Café, Inc.*, 2007 WL 2781242 (N.D. Cal. Sept. 20, 2007). Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's Second, Third, Fourth, and Fifth Claims for Relief.

---

[3] Because the Court finds that Plaintiff qualifies for the "outside salesperson" exemption, the Court need not address whether Plaintiff qualifies for the "administrative" exemption.

## IV.    Conclusion

For all of the foregoing reasons, Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment is **GRANTED**.  Plaintiff's Federal Rule 56(f) Motion is **DENIED**.

In light of the foregoing, Plaintiff's Motion for Class Certification is **DENIED as moot**.

The Scheduling Conference, currently on calendar for October 15, 2007, is **VACATED**.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.